The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons have any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit. I admonish to draw nigh and give their attention for the court is now sitting. God save the United States and His Honorable Highness. Please be seated. All right, we are prepared to hear the argument in Todman v. City of Baltimore and Mr. Redmond, I'd be happy to hear from you. Thank you. May it please the court, I am Michael Redmond here today with my colleague Renita Collins on behalf of the Mayor and City Council of Baltimore. We are here today because in 2007 the city passed an ordinance that created Subtitle 8A of Article 13 of the Baltimore City Code or simply Section 8A. Passing this ordinance, legislating Section 8A, is the only action taken by the city in this case. All the other actions involving the adjudication and execution of the Todman's eviction and the application of Section 8A were done by either private actors or by the Maryland state actors in no way controlled by the city. So what does Section 8A do? Well, the part of Section 8A... How is it that you can blame state actors for the impact of your city ordinance? Because as it was applied, it was what was held to do to have a lack of due process. The way in which it was applied, not the ordinance itself. Well, if this had happened anywhere else in the state, would the property have been taken and abandoned? Or is it only because of the city ordinance that that happened? There are two different questions, Your Honor. These two different jurisdictions, Baltimore County, which is separate from Baltimore City, and Prince George's County, also have laws that have ordinances. But it's your ordinance, isn't it? Yes, Your Honor. Well then, how does that... I mean, how's that going to sound when we say, despite the fact that it's your ordinance, you're a non-state actor? Well, we are a state actor. We're just not the state actor that applied this. We didn't do it. That's simply a matter of fact. We can't control the Maryland Judiciary or the Sheriff. Those are both state agencies that we as a local government simply cannot direct. I think you might do well if you try to defend the ordinance. Absolutely, Your Honor. And that is my intention. Tell me why you think this is a defensible ordinance. So the ordinance... Basically, the district court didn't even find that it was facially... that the ordinance itself was a due process violation. They found that it was facially valid. And indeed, the Supreme Court's jurisprudence from Texaco make it clear that it was valid. To explain what it does, it simply changes when a renter's personal property is deemed abandoned during the eviction process mandated by Maryland state law. This state law says that for carryover or holdover tenants, like the Todmans, whose lease has expired and who the landlord has asked them to leave, Maryland state law requires the landlord to give them 60 days notice to vacate. After 60 days, if the tenant or their stuff is still there, the landlord can... Given the notice that they received, does it make it clear to them that it applies to anybody other than those evicted for failure to pay rent? So, the notice you're talking about... Were the Todmans evicted for failure to pay rent? Pardon me, Your Honor? Let's start there. Were the Todmans evicted for failure to pay rent? No. Okay, so the notice that they received, where does it say that it applies to them who were being evicted not for failure to pay rent? Halfway down on the back where it says... Okay, well point me to the JA and... Yes, Your Honor. Sorry. Your Honor, I'm going to have to look that up and I'll give it to you on rebuttal. I'll find it, I'm sure. I would note that that was drafted by the Maryland judiciary. It is absolutely outside of the city's control what goes into that notice. But so, after... Well, after they received the notice, did they have an opportunity to be heard? Your Honor, they... Does it feel like a yes? It's just a yes or no. Did they have an opportunity to be heard? An opportunity to be heard between when they got the notice that they had been ordered to... ...eviction was going forward and when they were evicted. No, there was no opportunity to be heard then. That was their due process. Because the Supreme Court's precedence in Texaco explicitly says that simply passing an abandonment law like this does not require... ...the actual function of that self-executing abandonment law does not require notice before that occurs. That may be true as a general matter and I don't dispute the general proposition. But here you're dealing with an ordinance that's confiscatory and directly takes an abandoned... ...and considers the tenant's property abandoned. Most general laws that are passed, and it's true that ignorance of the law is no excuse. But this law has a very direct confiscatory effect upon these tenants. And it would seem to me it's your ordinance and it's their property. And before you take their property, you give them a little notice of something. What you sent them, if I'm reading correctly, there's so much fine print to it. And it would take quite a bit of time to figure it all out. And you're dealing with people that aren't lawyers and it's really confusing. Why is it such a burden on the city to have a simple notice saying this is the scheduled date of an eviction... ...there's the prospect of deprivation of your property, there's a presumption that you've abandoned the property upon eviction. But here you have a short period of time in which to contest that and here's where you go. And then why is that so complicated? The city has no ability to do that, your honor. That is what the Maryland state agencies do. The judiciary is who decides what goes... But you're playing a shell game with me. It's your ordinance. I am not, your honor. And in Texaco, they clearly said, and it was a confiscatory or abandonment law just as clearly as this one is here. It said that as to what notice is required before it happens, that is none is the answer. Before that happens, it's just like the way they actually analogized it at 454 U.S. at 536. You've got a problem with saying that the state prevents you from having this kind of ordinance. Why don't you take that up with the state and tell them that you may be under an obligation of federal law? Well, first of all, we can't tell the state what to do. Secondly, we're not under an obligation of federal law because of what Texaco says. At 454 U.S. at 536, it explains that no notice is actually required for the self-effectuating abandonment laws like this before they do. The notice and an opportunity to be heard discussed in Mullane. Well, I'm having a little trouble with this, that you're going to allow the minute the eviction takes place, you're going to allow the landlord to take someone's property and throw it in a landfill. The property here that is considered abandoned may mean a great deal to these folks. You have the basic items of furniture involved and you have maybe family mementos and everything. You've abandoned it all despite the fact that the tenant may have had no intention of abandoning any of it. Why do you resist that so strenuously? Somebody's most important and maybe sentimental items of their personal property are going to be taken without notice and tossed in a landfill or sold by the landlord or whatever. I mean, there's something that's not right about this. To be clear, Your Honor, a holdover tenant being evicted in Maryland has multiple months of notice that they and their stuff has to leave the rental unit that they have no right to remain in. It's 60 days notice before there's even an opportunity for the landlord to file a complaint to get the eviction. Then there's the whole process of getting the subpoena to the tenant, the judicial hearing, and then the actual ordering and scheduling and effectuation of the eviction itself. Mr. Redmond, forget about whether or not you think you're liable or not. As a practical matter, this thing happened two days before it was supposed to, regardless of who's on the hook for liability. Isn't that true? And if it's true, isn't that a denial of due process? I don't think, Your Honor, I think that when exactly they were supposed to do it and whether they had notice about when it was happening was actually a dispute of fact that the court acknowledged but said it was not material. Does that answer your question? If it were true— Well, that's how you found liability, isn't it? Pardon me? That's how liability was found. It was two days before it was supposed to happen. Yes, that was the claim disputed about it. But the thing is that the city of Baltimore did not tell them any time that they were going to be evicted because we had no way of knowing that because we're not involved in the eviction process. We don't have any control over the eviction process. We simply don't do that. The state of Maryland does that, and yet we were found liable for that failure. Is the record pretty clear that it did occur two days before it was supposed to occur, the eviction? It occurred two days before the Todmans thought it was going to occur. Whether—what exactly they were promised by the Maryland State Court and the landlord, there was talk about four weeks at one point, 30 days at another point, and yes, they said August 2nd. Was the date certain? What? There was a date certain given, and this occurred two days before that date? I think that's how you read the transcript from the Maryland State District Court, certainly. But again, the important point here is the city of Baltimore doesn't control the district court,  and the fact that the landlord filed for this two days before he said he was going to, that's not something that the city can control. Can the city control? What can the city control about their ordinance? The city can, under Texaco, which was—it can control what conditions are necessary in ultra-common law to make reasonable conditions to maintaining a property right in personal property. How hard would it be? The strenuousness of your objections befuddles me because I'm not sure why— what interest of yours would we be compromising? How hard would it be to have a plain, simple notice to tell these folks about the date of eviction and the presumption of abandonment that attends the eviction and that you have a short period of time? They're not asking for much. They're asking for a short period of time before a reasonable decision maker as to how they can overcome the presumption of abandonment or maybe they would have a few days of reprieve to collect their property and move on. And that seems to me just a matter of the city of Baltimore treating its citizens and some of whom are going to be its more destitute citizens, treating them with a basic measure of fairness. And I don't understand the strenuousness of the city's objections to this. How are we hurting you in any way? Your Honor, it would be fairly easy for the Maryland State General Assembly to dictate for the judiciary to change its notices for the Sheriff's Office— Have you ever heard of the Supremacy Clause? The state's under federal law too, you know. Yes, absolutely, but I'm not representing the state. The state was not held liable in this case. I'm representing the city, and the city is legally unable to do what you're asking. You're playing a show game with me. I'm not playing a show game. I'm simply telling you what abilities the city has. Actually, Judge Wilkinson's question about how is it hurting the city to just create— how is it hurting the city?  I can tell you if the city can do it, and the city can't do most of the things that the district court asked it to do. Okay, well, you know the notice we've been debating about, whether it was sufficient and due process was afforded, that's what we've been arguing about that you couldn't locate. Is it JA-333? So if you want to look at that. Certainly, but Your Honor, that's not the city's notice. That is not— That's what we're asking you about, though, JA-333. So if perhaps you could tell me where that provides— provided notice to the Todmans that it applied to them as holdovers. Well, you go look at that and answer Judge Thacker's question, because you have some rebuttal time. You've got some rebuttal time, and it was a good question that was asked you, and I want you to spend some time, not in front of us right now, but go back, look at it, and have an answer ready for her when your rebuttal comes around. Yes, Your Honor. Thank you, sir. One more time, Your Honor. Well, you want the question one more time? It's where does it provide them sufficient notice, and where does it give them an opportunity to be heard? Two questions. Thank you, Your Honor.  Mr. O'Cronin? O'Cronin, Your Honor. Yes, may it please me to honor O'Cronin on behalf of the Todmans. The judgment below should be affirmed by this court for three reasons. First is that the Todmans met every element of a 1983 procedural due process claim, as this court laid those elements out in Sansada against Nagset. And finding liability on behalf of the city here accords with the plain text of Section 1983, which renders a city liable for subjecting its citizens to a constitutional violation by enacting an ordinance. And second, when the city undertook to deprive tenants holding over of their personal property like the Todmans, it took on the obligation, as this court explained in Helping Against Hunt, the case involving video gaming machines, it took on the obligation under the Due Process Clause to provide a modicum of due process to avoid an unfair or mistaken deprivation of property. And third, and it wasn't addressed before, but the summary judgment procedure below, I think, was fair. The court granted the relief that we asked for to the extent that the court needed to invoke Rule 56F. The city waited to object to that until it was before this court, which is just too late. We also have a cross appeal on our takings dismissal, but the court doesn't need to reach that unless the reverse is on pursuit of due process. OK, yeah, that was one of the questions I had for you. If we affirm on due process, you agree we don't need to reach the takings? Absolutely. I do agree, Ron. Do you have a response? He seems to hinge, his opposing counsel seems to hinge his argument quite a bit on the Texaco case. Do you have a response to that? Yes, Your Honor. So a few things about Texaco. Number one, that was not a case that was cited below, so you're not going to see it analyzed in the district court's opinion. Also, it wasn't cited until their reply brief on the due process challenge. But Texaco involved a traditional form of an abandonment law. And as Chief Justice Roberts explained recently in the Hennepin County case, the hallmarks of abandonment, of real abandonment, are a really long period of time that serves as a proxy for the lack of intent to maintain your stuff. And in this case, you can be holding the property in your hand at the time, that the locks change and the abandonment ordinance kicks in and immediately and irrevocably transfers possession from the tenant to the landlord. And so Texaco is really, really far afield. And when a state or local government is going to enact that kind of confiscatory statute, then they have to give notice under the due process clause, and they have to, as Your Honor was asking earlier, provide some opportunity to be heard. The form, by the way, I look at a different part of the JA for the form that you were asking about, JA-728. Because you can't read the one on 333, correct? Precisely, and it's actually the fold is missing some key language. So I found that, and it took me a long time to figure that out preparing for this. So it's actually JA-728, I think it's the better version, although none of the versions are really all that legible. But to answer your question, nothing about this form indicated to the Todmans exactly what was going to happen during an eviction. It doesn't tell them when the eviction is. And, of course, the form doesn't provide any kind of opportunity to be heard. And all they needed was the slightest amount of process here. My friend on the other side mentioned the Prince George's County ordinance, which is very similar in effect. In Prince George's County, it's also a very harsh law, but it gives you four hours to get your stuff and take it. And in this case, the reasons that we hear the city say that this law is necessary is to keep streets clean and to facilitate the quick transition from one tenant to a new tenant. But none of those interests were at stake here. But you're not asking for much, as I understand it. All I thought you were asking for here was a simple, cleanly expressed direct notice that gives the holdover tenant a notice of the presumption of abandonment and how to take issue with the presumption of abandonment. And where you go. What kind of relief do you envision from the presumption of abandonment? What kind of relief would the tenants be entitled to? Speak here. Are you talking about a five-day reprieve from the presumption of abandonment? Or do you want to overturn the presumption of abandonment? What are you trying to do here in a remedial sense? I don't think that it even needs to be that dramatic. I don't think it's our role to say exactly how to fix the statute or fix the ordinance. What are you going to ask the court? What would you ask the decision-maker to do when you contest the presumption of abandonment? Here's what we're seeking in terms of a judgment and relief. What kind of equitable relief here are you requesting? I think on these facts, what the Todman's needed was just a few hours to say, before all this stuff becomes the landlord's, let us take it with us. There was never a danger it was going to end up on a public street. There was never any danger that the place wasn't going to be able to be re-rented. But apart from the Todman's, what would the ordinary petitioner be asking of the court? Surely some people are going to be asking for more than a few hours. I don't know of any apartment or residence where you can clean out all your furniture. You may have to schedule a moving van and everything. It's going to take longer than a few hours. What are you asking for? I just said notice and a reasonable period. This is an as-applied challenge. The court did not sustain a facial challenge here. I don't think that this court needs to write an opinion that says, in all cases, here's what the city would need to do. It's similar, I think, to this court's decision in Helton against Hunt, where the court looked at other kinds of states and other kinds of process. The city is making a variety of claims. In one of the sentences, it says, well, we have an interest here in not allowing a lot of furniture and other personal effects to simply pile up on the city streets. The presumption of abandonment allows the landlord to dispose of the property in some way, either a sale, or put it in a storage unit, or put it in a landfill, or whatever the landlord is going to do. I don't know if that's what the landlord is going to do, but if we leave the landlord the option of what to do with abandoned property from a holdover tenant, we're going to keep the property from just cluttering the streets and obstructing pedestrian and vehicular traffic and all the rest. Now, is that interest that the city claims going to be compromised by a series of due process hearings? I don't think it would be compromised at all. I think the facts of this case. Under Matthews v. Eldridge, that would be one of the questions we would have to ask. That would be one of the questions you'd have to ask. You weigh the burdens on the government versus the interests of the government. I don't see how the interests would at all be compromised. Tell me in simple terms why you don't think that would, why that interest in your view would not be compromised. Because this property was never in danger of being put on public lands. We're not talking about, we're talking about the ordinance as a general matter. We're not talking about specifically the Todman's property, and I'm prepared to accept what you say is a fair representation there. But what about the general interests here? I mean, just envisioning a large number of plaintiffs contesting the presumption. Well, if there's a large number of plaintiffs contesting the presumption, I think there are other less heavy-handed ways to deal with this kind of a problem. I mean, there are 24 subdivisions of Maryland, and Baltimore City is the only one that sees fit to be so heavy-handed in these situations. And to not allow even property that is indisputably meant to belong to the tenants, and when the question is, are you going to turn that property? You wouldn't be opposed if the time of reprieve was, say, two days? We would not be opposed to that, Your Honor. Now, I can't speak for other plaintiffs in their cases, and I don't think the court needs to decide every case. But in this case, two days would have been more than enough. I think two hours might have been enough for them to take a significant amount of their property. Now, the city, to come back to the point, the city contends that its hands are tied by state law. What's your response to that? So I want to point the court to one of the provisions of the abandonment ordinance, and that's Section 8A-3. Now, this only applies to failure-to-pay-rent tenants, but in two of these provisions in that section, Baltimore City is directing the sheriff, if the sheriff reasonably believes that the landlord did not provide the tenant with notice, the sheriff shall notify the district court and may not execute the warrant of restitution. And then there's a provision that deals with the district court, where the city of Baltimore directs that the district court, if the district court finds that the landlord did not provide the tenant with notice, required by Section 8A-2 of this subtitle, the district court shall vacate the warrant of restitution. Now, when a legislature uses the word shall, it is exercising control of the subject. And so I take issue with my friend on the other side's repeated assertion that they have no control. Does the city have the power to amend its ordinance and to rescind the presumption? Absolutely. It has control over its own ordinance. Why? I mean, because there's always, in the case in Virginia for a long time, had the Dillon Rule, where there's a conflict between local and state law, the local law yields. Well, I guess your response to that is the local law yields to the state, and the state law yields to the federal constitution. Well, there's nothing in state law that compels the city to declare personal property abandoned. I mean, the state laws have little to do with personal property. Nothing about state eviction laws destroys a tenant's rights in their property. It may regulate where they can keep the property, but that's a far cry from whether you get to maintain your interest in it. And if I give the court a hypothetical, if I routinely park in a handicap spot that I'm not entitled to park in, you know, I might get ticketed, my car might get towed, but under no circumstances does the owner of the parking lot get to keep my car. Mr. O'Connor, I have two questions. I think what you want us to do is to affirm your monetary judgment. That's the first question. And the second question is, but for this ordinance, the state of Maryland or the sheriff in that county couldn't do what was done in this case. Is that correct? Let me take the first question. Yes, we would like the court to affirm the judgment in full. I will point out that there was a trial in this case. There was no post-trial motion filed, and the city has not appealed anything about the trial in this case. They've not appealed anything about the monetary verdict, which was substantial and was imposed by a federal jury in this case. On your second question, if I understand it, Judge Floyd, I think the state of Maryland doesn't have really anything to do with the confiscatory aspect of the ordinance. Okay, I understand.  I don't think so, Your Honor. And because I didn't address the takings clause, I don't think I'd need my rebuttal, Tom. Well, let me ask my colleagues if they have further questions. Judge Floyd, do you have any further questions? No, sir. Let's hear from you in rebuttal. I've come back to the point that if the due process clause doesn't apply to this, I just don't know what it does apply to. That's my problem. Yes, Your Honor. The Supreme Court answered exactly that question in Texaco when it said that the reason in Mullane is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate or, in here, lapse of the property rights did or did not occur, but not to the self-executing feature of the Mineral Lapse Act. The due process standards of Mullane apply to an adjudication that is to be a courted finality. The court in Mullane itself distinguished the situation in which a state enacted a general rule of law governing the abandonment of property. That's at 535 in Texaco. So are you saying that the Todmans were not entitled to adequate notice and an opportunity to be heard in this case? Not before the self-effectuating abandonment aspect of 8A took place. The Texaco court analogized this kind of abandonment statute to a self-effectuating... And that's why you didn't want to talk about the notice they received because you just think it doesn't matter at all. Yes, but it doesn't as far as the due process obligations of the city for passing the statute, which is the only thing that the city did and the only thing the city could do in this. The city doesn't even know when evictions are happening because we play no role in the eviction process. But neither did the Todmans here. What? Neither did the Todmans here know when an eviction was happening. To be fair, Your Honor, they had more than the 60 days required notice that they were required to vacate and a court ordering them to leave, a court ordering the sheriff to make them leave by force if necessary. They agreed to the fact that they had to leave. That was a consent agreement. And they thought they were given two days more than they actually were given, but they were given almost a full month to leave. And they still didn't. This is a reasonable condition that the legislature can set up that, given all this time, where you don't have a right to be in the real estate anymore, that you need to, if you want to retain your property right in your personal property, you have to get that personal property out of the place that you don't have a right to have it. On the notice that they did receive, the one that we've been talking about, either JA333 or 728, where on that form does it say anything about the date when the eviction would occur? It doesn't have the date. Okay. The last paragraph right before the mobile homes part is where it says that this stuff will be done. But the date is not provided. And where on this form does it say that it applies to holdovers like the Todman's? That's right. It says, okay. If you're having trouble finding the answer to this, how do you think the Todman's are going to do? It's a very poor copy in real life. You can see it relatively easily. But, Your Honor, more to the point, this isn't something that the city had any control over. This is a notice provided by the District Court of Maryland, a state court, that they control what it is. The city can't force them to give a different notice. They can make the decision. Yes, the state is supreme to local just in the same way the federal is supreme to state. But we can't tell them what to do. We can't tell the sheriff what to do. You passed the ordinance, did you not? We did. And under Texaco, it says that we don't have an obligation to give notice. I'm sorry, Your Honor. If the city enacted the ordinance and the city passed the ordinance, why can't the city amend the very ordinance that it had the authority to enact and to pass? Your Honor, yes, the city could repeal the ordinance. The city could repeal its own ordinance. Absolutely, it has the power to do. But the question is not is it a good idea? Would it be better policy if they did this? Would it be less harsh? Those aren't the questions we're asking today. The question here is does the United States Constitution require that we do, we repeal this or that we provide notice with this? And the answer in Texaco, the Supreme Court says, no, we did not. We did not have an obligation. It's just like a self-executing statute of limitations where a person can have no notice but they lose their right to file a claim because a date has passed without any notice to them. And they say that's the same thing can happen with an abandonment statute like this that changes the common law. Thank you, sir. I'm going to once again ask my colleagues if they have anything further to add. I do not. Judge Floyd, do you have anything? Hello. What is that thing? I don't have any further questions. I'm sorry. Well, I see my time is up. Are there more questions or no?  Okay, thank you very much. Mr. Cronin, I see that you have two minutes. Do you have anything further to say? No, Your Honor. I'm waiting for that rebuttal. All right. Thank you. Thank you both. And we'll come down and greet counsel and proceed directly into our next case.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Henry F. Floyd